IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 23-308 |
| KAMAL FATALIEV | : | |

### GOVERNMENT'S TRIAL MEMORANDUM

**I.   THE INDICTMENT**

Counts One and Two of the Indictment in this case alleges that defendant Kamal Fataliev knowingly and willfully made materially false, fictitious, and fraudulent statements and representations to the Federal Bureau of Investigation, in violation of Title 18, United States Code, Section 1001(a)(2).

**II.   FACTUAL BACKGROUND**

The government expects that the evidence at trial will show that Fataliev has been active on two pro-terrorism groups: Chat Groups One and Two. Fataliev created Chat Group Two while a foreign user created Chat Group One. Both chat groups were populated with supporters of terrorist groups, with Chat Group Two focused on ISIS while Chat Group One had members of other groups. Fataliev used both groups to share his radical Islamist views, including being involved in a conversation about killing a French model who the chatters believed disrespected the Quran. Fataliev used various iterations of one username and used the ISIS black flag as his profile picture.

Chat Group Two was Fataliev's group and he was an active member of it. Another active user was a juvenile (Juvenile-1). Fataliev uploaded various documents to Chat Group Two that

1

he found elsewhere on the internet, including weapon and explosive manuals and a manual targeted toward western extremists titled "How to Survive in the West." Juvenile-1 messaged Fataliev directly, asking for more manuals such as guides on AK-47s. Fataliev told him that he only had them in Russian.

Juvenile-1 was eventually confronted by the FBI for his role in a planned plot to attack Shi'ite mosques and synagogues in Chicago. A search warrant was executed on his phone. On his phone, the FBI found Group Two with Juvenile-1, Fataliev, and others in it. "How to Survive in the West" was also on the phone.

Fataliev was an active participant in Chat Group One. Fataliev was a moderator in that group, although he claimed that the group was small and that everyone was a moderator. Fataliev posted over 200 files to the chat, including manuals related to weapons, guerilla warfare, and the manufacture of explosives and toxins.

In a March 28, 2022 interview, Fataliev admitted to taking part in Chat Group One, including forwarding books on guns and dangerous materials to the group, although he claimed not to have looked through the materials themselves and not to have taken them seriously. Fataliev signed a statement with these admissions.

In July 2022, the FBI again interviewed Fataliev. In this interview, Fataliev stated that he no longer had contact with any of his former online contacts. FBI admonished him not to support ISIS online anymore and explained the dangers of disseminating bomb-making materials. Fataliev stated that he would no longer do so.

On May 26, 2023, while executing a search warrant at his residence, the FBI again interviewed Fataliev. The interview was audio recorded. The FBI began the interview by reading 18 U.S.C. § 1001 to Fataliev and ensuring that he understood that lying to the agents was a crime. The agents reiterated this warning to Fataliev multiple times during the interview and told him that they would rather he say nothing than lie to them. Fataliev continued speaking.

The FBI asked Fataliev about Chat Group Two, specifically in the context of Juvenile-1's obtaining explosive information from that group. Fataliev adamantly and repeatedly denied that this was the case. When asked if he remembered Juvenile-1 being in Chat Group Two, Fataliev replied "No, no he was not." He then claimed that he was the only person in Chat Group Two. He said that he used Chat Group Two as storage for various files and documents he found online. While there were multiple usernames in the group, Fataliev claimed that all the usernames were his. He said he had multiple usernames in the group so that if he lost access to one, he wouldn't lose access to the group and all the files within it.

Specifically, after being asked why he was putting various files in Chat Group Two, Fataliev responded that "I did not put it out there. It was just for me. Like I did not share this stuff. It was a private group, the group was only for myself." When asked about there being other people in the group, he said: "No there are not." Asked again, he repeated: "No. Only me. Only my account is there. . . . I did not share this group with anyone, because, like I just, it was only for me." Later in the interview, the FBI returned to the topic. The interviewing agent stated again that there were other people in Chat Group Two. Fataliev responded:

> Yeah, but they were my accounts. I'm saying. There may have been like multiple accounts. Like I did them because – so the purpose of [Chat Group Two] was I'm telling you now is I created several accounts and I put them all in uh [Chat Group Two]. When one account was deleted I could enter [the group] from another account.

Asked if he was saying that every participant in Chat Group Two was one of his accounts, Fataliev responded: "Yeah. Just for storage purposes." The above statements – along with additional statements the following day, as detailed below – form the basis for Count Two of the Indictment.

The following day, Fataliev reached out to the agents. He claimed that he was tired the previous day having just returned home after a full day trip to New York City and wanted to talk again to correct some things. He did not correct or change any of the above statements about Chat Group Two.

At the beginning of the second interview, which was also recorded, the agents reminded Fataliev that it was a crime to lie to them. During the interview, the agents asked Fataliev about Chat Group One. Fataliev said he remembered the group and that people sent a lot of stuff there. He said he himself took material from Chat Group One and may have forwarded it to Chat Group Two. However, he denied any material moving the other way. He said: "I did not send anything from [Chat Group One] as far as I know to there." Fataliev was asked what the point of Chat Group Two was as a storage facility if he was willing to put things into Chat Group One. He replied: "I did not put it out in [Chat Group One]." Asked directly if he was saying that he did not post any materials in Chat Group One, Fataliev responded: "No because it's not my group but [Chat Group Two] was the main group that I was in." These statements form the basis for Count One of the Indictment.

Fataliev was indicted on July 18, 2023. He was arrested on July 19, 2023, and ordered detained on July 23, 2023.

### III. STATUTE CHARGED AND ELEMENTS OF THE OFFENSE

Title 18, United States Code, Section 1001(a)(2) states in pertinent part: "whoever, in any matter within the jurisdiction of … the United States, knowingly and willfully makes any materially false, fictitious, or fraudulent statement or representation … shall be fined under this title, imprisoned not more than 5 years … or both."

4

In order to prove Fataliev guilty of making a false statement to a federal agency under § 1001(a)(2), the government must prove the following elements beyond a reasonable doubt:

1. On or about the date specified, the defendant made a statement or representation;

2. That this statement or representation was material;

3. The statement or representation was false, fictitious or fraudulent;

4. The false, fictitious or fraudulent statement was made knowingly and willfully; and

5. The statement or representation was made in a matter within the jurisdiction of the government of the United States.

*United States v. Pawlowski*, 27 F.4th 897, 909 (3d Cir. 2022). A statement is material if it is "capable of influencing a reasonable decision maker investigating the . . . [crime]." *United States v. Silman*, 287 F. App'x 224, 226 (3d Cir. 2008). The government need not prove that an investigator believed the statement or that the statement influenced the course of the investigation. *See id.*

## IV. STIPULATIONS

At the time of the filing of this memorandum, the parties have not entered into any stipulations.

## V. WITNESSES

The Government may call the following witnesses in its case-in-chief:

    A.    FBI Special Agent Jed Fisher

    B.    FBI Special Agent Josh Reed

      C.      Pennsylvania Attorney General's Special Agent J.P. McDonald

      D.      Easton Lundsteen

The government reserves the right to supplement its witness list as may be required.

                Respectfully submitted,

                JACQUELINE C. ROMERO
                United States Attorney

                s/ Vineet Gauri
                _____
                VINEET GAURI
                Assistant United States Attorney
                Chief, National Security and Cybercrime

                s/ Joseph A. LaBar
                _____
                JOSEPH A. LaBAR
                Assistant United States Attorney

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the within Government's Trial Memorandum has been served this date by electronic filing and by electronic mail to:

>Hope C. Lefeber
>2 Penn Center, Suite 1205
>1500 John F. Kennedy Boulevard
>Philadelphia, PA 19102
>hope@hopelefeber.com

                                            s/ Joseph A. LaBar
                                            JOSEPH A. LaBAR
                                            Assistant United States Attorney

Dated: November 21, 2023